UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GE CHUN WEN,
*on behalf of himself and others similarly situated*,

                        Plaintiffs,

              -against-

HAIR PARTY 24 HOURS INC.
    d/b/a Hair & Spa Party 24 Hours;
HAIR 24 HOURS, INC.
    d/b/a Hair and Spa Party 24 Hours;
JIHEE SPROOCH KIM
    a/k/a Jenny Kim a/k/a Ji Xi Kin, and
JIN WOO AHN
    a/k/a Jinu Sproch,

                        Defendants.

15cv10186 (ER) (DF)

**REPORT AND
RECOMMENDATION**

---

**TO THE HONORABLE EDGARDO RAMOS, U.S.D.J.:**

On November 18, 2016, plaintiff Ge Chun Wen ("Plaintiff"), filed an Amended

Complaint in this wage-and-hour case (*see* Amended Complaint, dated Nov. 18, 2016

("Am. Compl.") (Dkt. 18 (also filed at Dkt. 68-3))), claiming that his employers, defendants Hair

Party 24 Hours, Inc. (d/b/a Hair & Spa Party 24 Hours), Hair 24 Hours, Inc. (d/b/a Hair & Spa

Party 24 Hours), Jihee Sproch Kim (a/k/a Jenny Kim, a/k/a Ji Xi Kin), and Jin Woo Ahn (a/k/a

Jinu Sproch) (collectively, "Defendants"), were jointly and severally liable to him and others

similarly situated for numerous violations of both the Fair Labor Standards Act (the "FLSA"),

29 U.S.C. §§ 201, *et seq.*, and the New York Labor Law (the "NYLL"), §§ 190, *et. seq.*, and 650,

*et seq.*, including, *inter alia*, a purported failure to pay minimum wage and overtime

compensation.[1]

---

[1] Plaintiff's original Complaint, which he attempted to file on January 10, 2016, states
that Plaintiff's suit was commenced "on behalf of *herself* and others similarly situated."
(Complaint, dated Jan. 1, 2016 (Dkt. 1), at 1 (emphasis added).)  That Complaint was rejected

After Defendants failed to move, answer, or otherwise respond to the Amended

Complaint, this matter was referred to this Court for a damages inquest.  During the time in

which that reference was pending, this Court issued two Orders seeking supplemental

submissions from Plaintiff's counsel because of omissions, obvious errors, and a certain lack of

coherence in the papers that Plaintiff had previously filed in support of his request for a default

judgment, and on which this Court sought to rely to calculate damages.  Then, even after receipt

of supplemental inquest submissions, my Chambers reached out to counsel to request further

clarification regarding Plaintiff's purported work schedule.  Taken as a whole, Plaintiff's various

default and inquest submissions – in particular, the two Affidavits submitted by Plaintiff

regarding the days and hours that he worked – are confusing, inexplicably inconsistent, and

arguably raise credibility issues on their face.  Nonetheless, on the complete record as it now

stands, this Court concludes that it can determine, with reasonable certainty, a sum of damages

---

due to a filing error, and was seemingly refiled one day later, on January 11, 2016.  (Dkt. 4.)
Upon refiling, however, Plaintiff's counsel apparently altered the pleading (without indicating
that they were doing so) to make it read that the suit was being brought by Plaintiff "on behalf of
*himself* and others similarly situated."  (*See id.*)  Likewise, Plaintiff's later-filed Amended
Complaint uses male gender pronouns when referring to Plaintiff.  (*See generally* Am. Compl.)
Subsequent submissions made by Plaintiff's counsel, however, have been unclear as to Plaintiff's
gender, as they have variously – and in the same documents – referred to Plaintiff by male,
female, and plural pronouns.  (*See, e.g.*, Memorandum of Law in Support of Plaintiff's Motion
for Default Judgement [sic], dated Nov. 27, 2018 (Dkt. 33-2), at 1 (captioning the case by
naming Plaintiff "on *her* own behalf and on behalf of others similarly situated"), 4 ("Plaintiff
through *her* counsel, John Troy of Troy Law, PLLC, submits this memorandum of law in support
of *her* application for a Default Judgment . . . ."), 5 ("Plaintiff commenced this action by filing
*their* Complaint on January 10, 2016 . . . ."), *id.* ("Plaintiff filed *his* Request for Certificate of
Default . . . .") (emphases added)); Declaration of John Troy in Support of Plaintiff's Motion for
Default Judgment, dated Nov. 27, 2018 (Dkt. 33), at 1 (captioning case by naming Plaintiff "on
behalf of *herself* and others similarly situated"), ¶ 4 ("Plaintiff commenced this action by filing
*their* Complaint . . . ."), ¶ 7 ("Plaintiff filed *his* Amended Complaint on November 18,
2016 . . . .") (emphases added).)  In response to an inquiry from my Chambers, counsel informed
one of my law clerks on February 23, 2021 that Plaintiff is, in fact, a man, and that "he/him/his"
are the appropriate gender pronouns to use when referring to him.

that should be assessed against Defendants upon their default – although, as a result of the inconsistencies in Plaintiff's papers, I recommend that the amount awarded be somewhat less than that sought.

For the reasons discussed below, I recommend that Plaintiff be awarded the following: (1) damages for unpaid overtime wages under the NYLL (which would afford Plaintiff greater relief than the FLSA), in the amount of $190,005.00; (2) liquidated damages with respect to those unpaid wages, in the amount of an additional $190,005.00; (3) prejudgment interest on the unpaid wages in the amount of $116,938.97, calculated up to the date of Plaintiff's most recently submitted interest calculations, plus additional prejudgment interest to be calculated by the Clerk of Court from that date to the date of entry of final judgment; (4) statutory damages of $10,000 for Defendants' failure to adhere to the wage-statement and wage-notice requirements of the NYLL; (5) attorneys' fees in the amount of $13,594.05 (which, like the unpaid wages, represents a reduction in the amount requested); and (6) litigation costs in the amount of $400.00 (an amount that is also less than that sought).

## BACKGROUND

### A.   Procedural History

#### 1.   Initial Proceedings Before Judge Ramos

Having apparently paid a filing fee to open this case on December 31, 2015 (*see* Dkt.), Plaintiff attempted to file his Complaint 10 days later, on January 10, 2016 (*see* Dkt. 1), but that filing was rejected as improperly made (*see id*.).  One day after that, on January 11, 2016, Plaintiff proceeded to file a new Complaint, which, as noted above (*see supra*, at n.1), was not identical to the pleading that Plaintiff had initially attempted to file, as it referred to him by different gender pronouns.  In any event, Defendants failed to respond to the Complaint, leading

3

Plaintiff to file a request for a Certificate of Default on August 23, 2016.  (Dkt. 16.)  On October 12, 2016, the Clerk of Court entered a Certificate of Default as to defendants Hair Party 24 Hours Inc., Hair 24 Hours Inc., and as to the individual defendants who had then been named in the action as Jihee Sproch Kim, and "John Doe."  (Dkt. 17.)

On November 18, 2016, Plaintiff filed an Amended Complaint, identifying the "John Doe" defendant as Jin Woo Ahn.  (*See* Am. Compl.)  After Defendants failed to respond to the Amended Complaint, Plaintiff filed another request for Certificate of Default on June 7, 2017.  (Dkt. 26.)  The Clerk of Court entered another Certificate of Default on June 29, 2017. (Dkt. 27.)

On January 3, 2019, Plaintiff then filed a motion for a default judgment as to all Defendants (Dkt. 32), supported by an attorney Declaration (*see* Declaration of John Troy in Support of Plaintiff's Motion for Default Judgment, dated Nov. 27, 2018 ("11/27/18 Troy Decl.") (Dkt. 33)), an Affidavit from Plaintiff (*see* Affidavit of Ge Chun Wen in Support of Default Judgment Motion, sworn to Sept. 6, 2018 ("9/6/18 Wen Aff.") (Dkt. 33-1)), and a memorandum of law (*see* Memorandum of Law in Support of Plaintiff's Motion for Default Judgement [sic], dated Nov. 27, 2018 ("Pl. Mem.") (Dkt. 33-2)).  On June 27, 2019, Plaintiff additionally filed a motion for attorneys' fees (Dkt. 34), supported by another attorney Declaration (Declaration of John Troy in Support of Motion for Attorneys' Fees and Costs, dated June 19, 2019 ("6/19/19 Troy Decl.") (Dkt. 35)), and an additional memorandum of law (*see* Memorandum of Law in Support of Motion for Attorneys' Fees and Costs, dated June 27, 2019 ("Pl. Fee Mem.") (Dkt. 36)).

On September 18, 2019, the Honorable Edgardo Ramos, U.S.D.J., denied both of those motions without prejudice, for lack of compliance with the procedures contained in the Court's

Individual Rules of Practice.  (*See* Dkt. 37.)  On November 5, 2019, however, after Plaintiff's

counsel apparently remedied their procedural error, Judge Ramos issued an Order To Show

Cause, directing Defendants to appear before the Court on December 6, 2019, and show cause

why a default should not be entered against them.  (Dkt. 39.)  When Defendants did not appear

on that date, Judge Ramos granted Plaintiff's motion for a default judgment, simultaneously

referring the matter to this Court for an inquest on damages and attorneys' fees.  (Dkt. 45.)

### 2.    Proceedings Before This Court

On January 24, 2020, this Court issued a Scheduling Order, directing any defendants who

wished to contest the amounts requested by Plaintiff do so in writing no later than February 24,

2020.  (Dkt. 47.)  This Court also directed Plaintiff to serve all Defendants with a copy of the

Order and to file proof of service no later than January 31, 2020.  (*Id.*)  This Court expressly

cautioned Defendants that, if they failed to respond to Plaintiff's submissions by February 24,

2020, then this Court would proceed to issue a report and recommendation concerning damages

on the basis of Plaintiff's submissions alone, and that it would not hold a hearing on damages.

(*See id*.)  Plaintiffs filed proof of service on February 3, 2020 (Dkts. 48, 49, 50, 51), but

Defendants submitted no response.

After reviewing Plaintiff's submissions, however, and finding that the "damages

spreadsheets" that Plaintiff purported to have filed in support of his damages calculations had

not, in fact, been filed, this Court issued a follow-up Order on November 23, 2020, directing

Plaintiff to make a "supplemental submission with respect to damages, by filing the referenced

spreadsheets on the Docket of this action."  (*See* Dkt. 52.)  In that Order, this Court directed

Plaintiff to make his supplemental submission by November 30, 2020, and afforded Defendants

until December 18, 2020 to file a response.  (*Id*.)  On November 27, 2020, Plaintiff filed

supplemental submissions clarifying his damages calculations and attaching additional supporting materials.  (*See* Letter to the Court from John Troy, Esq., dated Sept. 30, 2020 (Dkt. 53); unsworn Affidavit of Accounting [of John Troy], dated Nov. 27, 2020 ("11/27/20 Troy Aff.") (Dkt. 53-1); Damages Calculation ("Dam. Calc.") (Dkt. 53-2).)  Defendants did not file any response to those supplemental submissions.

Then, upon further review of Plaintiff's submitted materials, including his newly proffered damages spreadsheet, this Court again directed Plaintiff to provide additional information, primarily – as discussed in detail below – to clarify certain discrepancies in the factual allegations made in his submissions.  (*See* Order, dated Jan, 13, 2021 (Dkt. 60),)  After affording Plaintiff an extension of time to provide the information sought, this Court received additional material from Plaintiff on February 11, 2021,[2] including a revised damages calculation.  (*See* Declaration of Aaron Schweitzer in Response to Court's Order dated January 13, 2021, dated Feb. 10, 2021 ("2/10/21 Schweitzer Decl.") (Dkt. 68); Affidavit of Ge Chun Wen in Support of Default Judgment Motion, dated Feb. 5, 2021 ("2/5/21 Wen Aff.") (Dkt. 68-1); Damages Calculation ("Revised Dam. Calc.") (Dkt. 68-4).)

Finally, after reviewing the totality of Plaintiff's submissions, including his supplemental submissions, this Court, through Chambers staff, reached out to Plaintiff's counsel to highlight yet another factual issue, and to request still more clarification.  On February 24, 2021, Plaintiff's counsel filed yet another Declaration, ostensibly to correct an error in the supplemental submissions that had been made only two weeks earlier.  (*See* Supplemental

---

[2] Although these materials were due on February 10, 2021 (*see* Dkt. 66), Plaintiff's counsel reported to my Chambers, on that date, that they were having technical difficulties filing their papers on the Court's Electronic Case Filing ("ECF") system, and they therefore sent copies directly to Chambers and uploaded them to the Docket the next day.

Declaration of Aaron B. Schweitzer, dated Feb. 23, 2021 ("2/23/21 Schweitzer Decl.")
(Dkt. 73).)

Plaintiff filed proof of service of all of his supplemental submissions (*see generally* Dkt.),
but, once again, Defendants did not respond.

B.    **Plaintiff's Factual Allegations and Claims**

Given the shifting representations that have been made by Plaintiff from the inception of
this action to date, it is difficult to set forth, with confidence, the underlying facts that are
relevant to the damages being sought.  Under the circumstances, this Court will track the factual
allegations that have been made by Plaintiff, and that have changed over time.  This Court notes
that, in the default context, the well-pleaded allegations of the operative pleading – here, the
Amended Complaint – are deemed to be true, except for those allegations relating to damages.[3]
In this instance, some of the allegations of Plaintiff's pleading make little sense, and have been
altered by his subsequent affidavits, as this Court will explain.

1.    **Plaintiff's Amended Complaint and Initial Damages Submissions**

a.    **Factual Allegations**

According to the Amended Complaint, Plaintiff was employed by Defendants as a hair
and nail salon employee at two salons in New York City, from approximately June 20, 2012 to
February 5, 2016.  (Am. Compl. ¶ 27.)

Plaintiff alleged in his pleading that, for the first portion of this employment – a period he
described as running from on or about June 20, 2012 to October 31, 2015 – he was paid a flat
rate of $560 per week, and that he worked seven days a week:  14 hours on each of five days,

---

[3] *See* Discussion *infra,* at Section I(A)(1)-(2); *see also, e.g.*, *Guaman v. J&C Top
Fashion, Inc.*, No. 14cv8143 (GBD) (GWG), 2017 WL 111737, at *1 (S.D.N.Y. Jan 11, 2017).

and 10 hours on each of the remaining two days, totaling "around ninety (90) hours" per week. (*Id*. ¶¶ 28-29, 32.)  For the second period (which Plaintiff confusingly described as "[f]rom on or about November 1, 2015 to the present day" (*id*. ¶ 30), even though he had allegedly left the job more than nine months prior to the filing of Amended Complaint), he alleged that he was paid a flat rate of $480 per week and that he worked six days a week – on the same schedule as applied to the earlier period, but with one (varying) day off per week, for "around ninety [sic] (72) hours" per week.  (*Id*. ¶¶ 30-31, 33.)  This hours allegation obviously made no sense; even assuming that the stated "ninety" hours was a typographical error, and that Plaintiff meant to state that he worked around 72 hours a week during this period, Plaintiff does not explain how he could have possibly subtracted one day's hours (*i.e.*, either 14 or 10 hours) from the prior seven-day total of 90 hours, and mathematically arrived at a six-day total of 72 hours.

In support of his motion for a default judgment, Plaintiff also submitted an Affidavit (*see* 9/6/18 Wen Aff.), which, he explained, had been translated to him into his native language of Chinese (*see id*. ¶ 21).  Plaintiff's Affidavit essentially tracked the above allegations of the Complaint regarding the number of hours he worked for Defendants, except that – consistent with his pleaded allegation as to when he left his employment – Plaintiff clarified that the second period of his employment ran to only February 5, 2016 (rather than to the present day) (*see id*. ¶¶ 8-9), and he asserted, although again without explanation, that, during that period, he worked "approximately seventy two (72) hours" per week (*id*. ¶ 9).

Even apart from the fact that this Court was unable to discern how Plaintiff had arrived at the 72-hour figure, there were further confusing aspects to the facts alleged in the Amended Complaint and asserted in Plaintiff's supporting Affidavit.  In particular, when enumerating the days that he worked during the two periods of his employment, Plaintiff alleged in the Amended

Complaint that, in the first period, he worked 14 hours a day on "Mondays, Tuesdays, Wednesdays, Fridays, and *Saturdays*" (Am. Compl. ¶ 28(a) (emphasis added)), plus 10 additional hours a day on "Thursdays and *Saturdays*" (*id*. ¶ 28(b) (emphasis added)).  Further, Plaintiff made exactly the same apparent error in describing the days he worked during the second period of his employment, again identifying Saturday twice.  (*See id*. ¶ 30(a)(b).)

In his submitted Affidavit, Plaintiff then changed his allegation regarding the days he worked during the first period of his employment (*see* 9/6/18 Wen Aff. ¶ 6), stating that, during that first period, he worked 14 hours a day on "Mondays, Tuesdays, Wednesdays, Fridays, and *Saturdays*" (*id.* ¶ 6(a) (emphasis added)), and an additional 10 hours a day on "Thursdays and *Sundays*" (*id.* ¶ 6(b) (emphasis added)).  Plaintiff, however, did not fix the seeming error in connection with his pleaded description of the days that he purportedly worked during the second period of his employment.  (*See id*. ¶ 8 (still stating that, from on or about November 1, 2015 to February 5, 2016, Plaintiff worked for 14 hours a day on "Mondays, Tuesdays, Wednesdays, Fridays, and *Saturdays*," plus 10 hours a day on "Thursdays and *Saturdays*," with one day off each week (emphasis added)).)

Plaintiff also alleged, both in his Amended Complaint and Affidavit, that, throughout his employment, he was "not given a fixed time for lunch or dinner," and, instead, was given 10 to 15 minutes "to buy dinner and eat outside" the business.  (Am. Compl. ¶¶ 35, 36; *see also* 9/6/18 Wen Aff. ¶ 10 (stating that, for the full period of his employment, he "was given between ten (10) to fifteen (15) minutes break").)

Plaintiff additionally alleged, both in the Amended Complaint and his Affidavit, that he was never provided with a "Time of Hire Notice" in English and in Chinese (his primary language), or with a paystub that listed, *inter alia*, his rate of pay and his gross and net wages, as

required by the NYLL.  (Am. Compl. ¶¶ 41-42; 9/6/18 Wen Aff. ¶ 17.)  He further asserted that Defendants failed to maintain accurate records of his hours and wages.  (Am. Compl. ¶ 40; 9/6/18 Wen Aff. ¶ 16.)

b.    **Asserted Claims**

In his Amended Complaint, Plaintiff purported to assert 13 separate claims.  Under the FLSA, he pleaded claims for minimum-wage and overtime violations (Counts I and III) and for retaliation (Count XII).  He pleaded analogous claims under the NYLL (*see* Counts II, IV, and XIII), as well as additional NYLL claims for Defendants' alleged failure to provide "spread-of-hours" pay (Count V), to provide meal periods (Count VI), to satisfy record-keeping requirements (Count VII), to provide "Time of Hire" wage notices (Count VIII), and to provide proper pay stubs (Count IX).  In addition, Plaintiff asserted claims for civil damages for Defendants' allegedly fraudulent filing of federal tax returns (Count X), and for their engaging in allegedly deceptive acts and practices, in violation of the New York General Business Law (Count XI).

Plaintiff then appeared to abandon a number of those claims when he sought damages upon Defendants' default, instead seeking damages only under the NYLL, for unpaid overtime and spread-of-hours compensation (plus liquidated damages based on those amounts), and for wage-statement and wage-notice violations.  (*See* Dam. Calc.)  The basis for the requested spread-of-hours pay, however, was unclear.  As discussed below (*see* Discussion, *infra*, at Section I(E)), the NYLL entitles a minimum-wage employee to receive, as so-called "spread-of-hours" pay, an additional hour of minimum wage for any day in which he or she works more than 10 hours, but a worker who receives a base hourly rate that is above the state minimum-wage rate is not entitled to such additional pay (*see id.*).  In his damages submissions, Plaintiff

took the position that his base hourly rate of pay should be calculated based on an assumption

that his flat weekly pay was intended to cover only the first 40 hours that he worked in a given

work week.  Using that assumption, Plaintiff calculated his base rate of pay to be more than the

state minimum wage at all relevant times.  (*See* Dam. Calc.)  He did not then explain why he

believed he was still entitled to damages for unpaid spread-of-hours compensation.

### 2.      Plaintiff's Supplemental Submissions

In light of the confusing nature of Plaintiff's pleaded and sworn statements regarding

both the days and hours that he worked during his employment by Defendants, as well as

Plaintiff's continued request for damages for a supposed spread-of-hours violation (despite his

apparent concession that he was paid more than the minimum wage), this Court, by Order dated

January 13, 2021, directed that Plaintiff clarify his inquest submissions.  (Dkt. 60.)[4]

In response to this Court's Order, Plaintiff's counsel submitted an attorney Declaration

(2/10/21 Schweitzer Decl.) indicating that Plaintiff was no longer seeking unpaid spread-of-

hours compensation, and conceding that "he [was] not qualified" to recover such compensation

under New York law (*id*. ¶ 20; *see also* Revised Dam. Calc.)).

In addition, Plaintiff himself submitted a "revised" Affidavit, for the stated purpose of

"specifically clarifying [his] working days with Defendants."  (2/5/21 Wen Aff. ¶ 5.)  Yet,

beyond "clarifying" his earlier submissions as this Court had anticipated – *i.e.*, by fixing

typographical or mathematical errors – the revised Affidavit changed the substance of material

facts that Plaintiff had previously sworn to be true.  Notably, although he still stated that he had

---

[4] In its January 2021 Order, this Court apparently improperly referred to Plaintiff with female pronouns, not realizing that Plaintiff's counsel had erred in using such pronouns in certain of their submissions.  (*See supra*, at n.1.)

been paid $560 and $480 per week, respectively, during two periods of his employment, Plaintiff

now described five separate sub-periods of time, in which his hours differed.

Specifically, instead of maintaining that, during the first period of his employment, he

worked 90 hours per week, Plaintiff newly asserted that he worked 90 days per week only for

roughly six-and-a-half months (from June 12, 2012 through on or about December 31, 2012),

and that, for the remainder of that first period, spanning *nearly another three years* (from on or

about January 1, 2013 through on or about October 31, 2015), he actually worked *94* hours per

week.  (*See id*. ¶¶ 6-7.)  And, instead of maintaining that, during the second period of his

employment, he worked 72 hours per week, Plaintiff asserted that he worked 80 hours per week

for a few weeks (from on or about November 1, 2015 through on or about December 31, 2015),

and then switched to 70 hours per week (from on or about January 1, 2016 through on or about

January 15, 2016), and then to 56 hours per week (from on or about January 16, 2016 through

February 5, 2016).   (*See id*. ¶¶ 8-10.)  Although the "80 hours" would make sense,

mathematically, if, during the second period of Plaintiff's employment, he no longer worked one

of the 10-hour days that had been included in his previous 90-hour work-week schedule, his

assertion that there were times when he actually worked 70 hours or 56 hours per week

represented entirely new allegations.

Moreover, in one respect, Plaintiff's second Affidavit failed to clarify the days on which

he worked.  In particular, Plaintiff states, at one point, that, for the period from on or about

November 1, 2015 through on or about December 31, 2015, he worked 14 hours a day on

"Mondays, Tuesdays, Wednesdays, Fridays, and *Sundays*" (*id*. ¶ 8(a) (emphasis added)), and

that, in addition, he worked 10 hours a day on "either Thursday or *Sunday*, depending on the

week" (*id*. ¶ 8(b) (emphasis added)).  Upon seeing this, my Chambers reached out to Plaintiff's

counsel to ask, again, for a clarification.  While my Chambers informed counsel that he could

file his own declaration in order to provide an explanation, the supplemental attorney Declaration

that counsel then submitted (*see* 2/23/21 Schweitzer Decl.) merely stated that the reference to

"Sundays" in paragraph 8(a) of Plaintiff's second Affidavit was a "typographical error," and

"should be stricken and replaced with 'Saturdays'" (*id.* ¶ 1).  Counsel did not state that the error

was of his own making, or explain how the error could have come to be, when the full client

Affidavit had purportedly been translated, read to Plaintiff in his native language of Mandarin

Chinese, and confirmed by him to have been accurate.  (*See* 2/5/21 Wen Aff., at ECF 5.)[5]  Nor

did counsel even state, in his supplemental Declaration, that he had undertaken to reach out to

Plaintiff and had communicated with him, with the aid of an interpreter, to confirm the days of

Plaintiff's employment.  (*See* 2/23/21 Schweitzer Decl.)  In other words, the Declaration from

counsel did not attest that counsel had any personal knowledge of the underlying "corrected"

facts that counsel was asking the Court to accept as true.

---

[5] As the pages of this document are not numbered, this Court has referred to the page number affixed to the document by the Court's ECF system.  Here, the cited page of Plaintiff's second Affidavit includes a "Declaration of Translation" by Yige Chen, stating the following:

> I am fluent in Mandarin Chinese and English.  I have provided a true and accurate translation of [Plaintiff's second Affidavit], detailed as follows:
>
> [Plaintiff] told me what to write in his affidavit on February 5, 2021 in Mandarin Chinese language.  I wrote down what he said in English.  I then translated the English affidavit back to [Plaintiff] in Mandarin Chinese language.  [Plaintiff] told me that he fully comprehends the content of the document.  He signed it as it was translated to him in Mandarin Chinese language, and [Plaintiff] confirmed the truth and accuracy of each statement in the Affidavit . . . in Mandarin Chinese.

(*Id.*)

<u>**DISCUSSION**</u>

I.    <u>**APPLICABLE LEGAL STANDARDS**</u>

     A.    <u>**Inquest Upon a Default Judgment**</u>

          1.    <u>**Establishment of Liability Through Default**</u>

Under Rule 55 of the Federal Rules of Civil Procedure, a party defaults when it "has failed to plead or otherwise defend" against a judgment for affirmative relief. Fed. R. Civ. P. 55(a).  There is no question that "default is an admission of all well-pleaded allegations against the defaulting party," *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004), and that "a default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability," *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973).  Thus, as a general matter, a district court must accept as true all of the factual allegations of the non-defaulting party and draw all reasonable inferences in its favor.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

The court, however, "need not agree that the alleged facts constitute a valid cause of action," *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981), but is instead "required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law," *Finkel*, 577 F.3d at 84; *Taizhou Zhongneng Import and Export Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013) (summary order).  In other words, because a defendant's default only establishes its liability based on the *well-pleaded* allegations of the complaint, the court must still scrutinize the plaintiff's pleading and find the claims sufficiently pleaded.  *See Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 313 (S.D.N.Y. 2014) (stating that, "since the allegations in the complaint must be 'well-pleaded,' we are required to examine whether those factual allegations, if deemed true, establish liability" (citing

*Finkel*, 577 F.3d at 84)); *see also Centra Developers Ltd. v. The Jewish Press Inc.*, No. 16-CV-6737 (WFK) (LB), 2018 WL 1445574, at *1 (E.D.N.Y. Mar. 23, 2018) (finding, despite defendant's default, that plaintiff was not entitled to recover damages on pleaded claims that failed as a matter of law); *Greathouse v. JHS Sec. Inc.*, No. 11cv7845 (PAE), 2012 WL 5185591, at *5 (S.D.N.Y. Oct. 19, 2012) (finding, after a damages inquest upon the defendant's default, that the plaintiff was not entitled to damages on an inadequately pleaded FLSA retaliation claim), *vacated and remanded on other grounds*, 784 F.3d 105 (2d Cir. 2015).

## 2.    **Necessity of Proof of Damages**

Although a "'default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability,'" it does not reach the issue of damages. *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)).  Thus, in conducting an inquest on default, a court accepts as true all of the factual allegations of the complaint, *except* those relating to damages, *Au Bon Pain Corp.*, 653 F.2d at 65, and the plaintiff must substantiate his or her claim with evidence to prove the extent of damages, *see Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must introduce evidence to prove damages suffered and the court will then determine whether the relief flows from the facts (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974))).  The burden is on the plaintiff to "introduce sufficient evidence to establish the amount of damages with reasonable certainty," *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, No. 12cv1369 (LGS) (AJP), 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013) (citations omitted), *report and recommendation adopted*, 2013 WL 4505255 (Aug. 23, 2013), although the plaintiff is entitled to all reasonable inferences in its favor based on the evidence submitted, *see U.S. ex rel. Nat'l Dev. & Constr.*

*Corp. v. U.S. Envtl. Universal Servs., Inc.*, No. 11cv730 (CS), 2014 WL 4652712, at *3
(S.D.N.Y. Sept. 2, 2014) (adopting report and recommendation).

Where a defaulting defendant has not made any submission on a damages inquest, the
court must assess whether the plaintiff has provided a sufficient basis for the court to determine
damages, *see Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111
(2d Cir. 1997), and the court may determine the adequacy of the plaintiff's damages claim
based on its submitted proofs alone, *see, e.g.*, *Garden City Boxing Club, Inc. v. Hernandez*,
No. 04cv2081 (LAP) (DF), 2008 WL 4974583, at *4-5 (S.D.N.Y. Nov. 24, 2008) (determining
the adequacy of plaintiff's damages claim based solely on its submitted proofs where defendant
neither responded to plaintiff's submissions with respect to its claimed damages nor requested a
hearing).  In its discretion, the court may also hold a hearing to assess the amount of damages
that should be awarded on a default.  *See* Fed. R. Civ. P. 55(b)(2); *see also Tamarin v. Adam
Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (judges are given much discretion to determine
whether an inquest need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir.
1991) (Fed. R. Civ. P. 55(b)(2) "allows but does not require . . . a hearing"); *Fustok v.
ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) ("[b]y its terms, [Rule] 55(b)(2)
leaves the decision of whether a hearing is necessary to the discretion of the district court").

### 3.  Limits on Available Damages, Under Rule 54(c)

Regardless of the submitted proofs or testimony, damages awarded upon a defendant's
default "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."
Fed. R. Civ. P. 54(c).  This requirement has been interpreted as being necessary to ensure that the
defendant has been given adequate notice of the scope of damages it could face, upon its default.
*See*, *e.g.*, *Gucci America, Inc. v. Gold Center Jewelry*, 997 F. Supp. 339, 404 (S.D.N.Y. 1998)

16

("The rationale for the rule, insofar as it applies to default judgments, 'is that default is tantamount to consent to the entry of judgment, but this consent is effective only to the extent that it was duly informed.'" (quoting 10 Moore's Federal Practice § 54.71, at 54-127 (3d ed. 1997)), *rev'd on other grounds*, 158 F.3d 631 (2d Cir. 1998); *Belizaire v. RAV Investigative & Sec. Servs. Ltd.,* 61 F. Supp. 3d 336, 345 (S.D.N.Y. 2014) (adopting report and recommendation noting that "courts in this jurisdiction have interpreted the Rule 54(c) requirement to turn on defendant's receipt of adequate notice of the scope of damages").

### B.     Burden of Proof in Wage Cases, Where Defendants' Records Are Inadequate or Have Not Been Produced

In an FLSA case, the burden falls on the plaintiff-employee to demonstrate "'that he performed work for which he was not properly compensated.'"  *Santillan v. Henao*, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded on other grounds by* The Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251, *et seq.*).  As noted by the Supreme Court, however, employees "'seldom keep . . . records [of hours worked] themselves,'" *id*. at 294 (alteration in original) (quoting *Anderson*, 328 U.S. at 687), and, "'even if they do, the records may be and frequently are untrustworthy,'" *id*. (quoting *Anderson*, 328 U.S. at 687).  Employers, on the other hand, have a duty to maintain such records pursuant to Section 11(c) of the FLSA, and, thus, the "easiest way for an FLSA plaintiff to discharge his or her burden of proof is, generally, to 'secur[e] the production of such records' from the employer."  *Id.* (alteration in original) (quoting *Anderson*, 328 U.S. at 687).

A defaulting defendant "deprive[s] the plaintiff of the necessary employee records required by the FLSA, thus hampering [the] plaintiff's ability to prove his damages."  *Id.*  As a result, where a defendant defaults, a plaintiff may meet his or her burden of proof "by relying on recollection alone" to establish that he "performed work for which he was improperly

compensated." *Id.* at 293-94 (citing cases and finding, in default context, that plaintiff provided a "sufficient basis for [the] determination of damages" where he "submitted a sworn declaration containing information as to hours worked and rates of pay based on estimation and recollection," even where the plaintiff's submission was "general and not detailed" (internal quotation marks and citations omitted)).  "Moreover, in the absence of rebuttal by defendants . . . [the employee's] recollection and estimates of hours worked are presumed to be correct." *Id.* (internal quotation marks and citations omitted); *see also Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997) (holding that where an employer fails to produce evidence regarding the amount of work that the employee performed or evidence to negate "the reasonableness of the inference to be drawn from the employee's evidence," the court may "award damages to the employee, even though the result be only approximate" (quoting *Anderson*, 328 U.S. at 687-88)).

Under New York law, courts actually "go[] one step further and require[] that employers who fail to maintain the appropriate records 'bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Santillan*, 822 F. Supp. 2d at 294 (quoting N.Y. Lab. Law § 196-a).

**C.      FLSA and NYLL Statutes of Limitations**

Under the FLSA, the applicable statute of limitations is generally two years, except that, where the employer is found to have committed a "willful" violation of the law, the limitations period is extended to three years.  29 U.S.C. § 255(a).  Willfulness under the FLSA is found where an employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  At the pleading stage, a plaintiff must allege facts "that give rise to a plausible

inference that a defendant willfully violated the FLSA for the three-year exception to apply."
*Whiteside v. Hover-Davis, Inc.*, No. 20-798, 2021 WL 1619488, at *2 (2d Cir. Apr. 27, 2021).   In
the default context, however, it has been noted that "a defendant's default, in itself, may suffice
to support a finding of wil[l]fulness."   *Santillan*, 822 F. Supp. 2d at 297.   The applicable
limitations period for NYLL claims is six years.   N.Y. Lab. Law § 663(3).

The statute of limitations provides an affirmative defense, which is waived by the
defendant upon its default.   *United States Sec. & Exch. Comm'n v. Boock,* 750 F. App'x 61, 62
(2d Cir. 2019); *Melgadejo v. S & D Fruits & Vegetables Inc.,* No. 12cv6852 (RA) (HBP), 2015
WL 10353140, at *8 (S.D.N.Y. Oct. 23, 2015), *report and recommendation adopted,* 2016 WL
554843 (S.D.N.Y. Feb. 9, 2016); *Guallpa v. N.Y. Pro Signs Inc.,* No. 11cv3133 (LGS) (FM),
2014 WL 2200393, at *2 n.2 (S.D.N.Y. May 27, 2014), *report and recommendation adopted,*
2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014).   In the FLSA context, it has been held that, where,
upon a defendant's default, a plaintiff seeks damages that would otherwise be time-barred under
the statute, the plaintiff may recover for a period going back farther than three years prior to the
filing of the complaint, but the plaintiff's recovery should still be limited to a three-year period.
*See Guallpa,* 2014 WL 2200393, at *2 n.2 ("Courts in this Circuit [] generally have limited a
plaintiff's recovery in the event of a defendant's default to the time period covered by the FLSA
statute of limitations.").

### D.   Damages Available Under the FLSA and and the NYLL for Overtime Pay Violations

Pursuant to the FLSA, an employee must be paid, at least, the federal statutory minimum
wage for the first 40 hours that he or she worked in a given work week.   29 U.S.C. § 206(a).
Moreover, an employee is entitled to be paid for overtime hours (*i.e.*, hours exceeding 40 per
week), at a "rate not less than one and one-half times the regular rate at which [the employee] is

employed."  *Id.* § 207(a)(1).  Since July 24, 2009, the federal minimum wage has been set at

$7.25 per hour.  *See* 29 U.S.C. § 206(a)(1)(C).

The NYLL, like the FLSA, mandates payment at, at least, a statutory minimum wage

rate, as well as one and one-half times the regular normal rate of pay for each hour worked by an

employee in excess of 40 hours per week.  12 N.Y.C.R.R. § 142-2.2.  For the periods relevant to

this action, the statutory minimum wage in New York State was the following:  as of January 1,

2007, $7.25 per hour; as of December 31, 2013, $8.00 per hour; as of December 31, 2014, $8.75

per hour; and, as of December 31, 2015, $9.00 per hour.  N.Y. Lab. Law § 652(1).

Where an employee earns a fixed salary, "the regular hourly rate of pay, on which time

and a half must be paid, is computed by dividing the salary by the number of hours which the

salary is intended to compensate."  29 C.F.R. § 778.113(a).  Courts have recognized that, under

the FLSA, there is a "rebuttable presumption that a weekly salary covers only the first [40]

hours, unless the parties have an alternate agreement."  *Pinovi v. FDD Enterps., Inc.*,

No. 13cv2800 (GBD) (KNF), 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015); *see also Giles v.*

*City of New York*, 41 F. Supp. 2d 308, 316-17 (S.D.N.Y. 1999) ("The fact that an employee

regularly works 60 or more hours does not, without more, indicate that the employee's weekly

salary was intended to include the FLSA overtime premium for all hours in excess of 40.").

Courts in this District have extended this rebuttable presumption to apply under the NYLL, as

well as the FLSA.  *See, e.g.*, *Pinovi*, 2015 WL 4126872, at *4; *Pastor v. Alice Cleaners, Inc.*,

No. 16cv7264 (JLC), 2017 WL 5625556, at *2 (S.D.N.Y. Nov. 21, 2017); *Amaya v. Superior*

*Tile & Granite Corp.*, No. 10cv4525 (PGG), 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012).

"[T]he employer can rebut the presumption by showing an employer-employee agreement that

the salary covers a different number of hours."  *Giles*, 41 F. Supp. 2d at 317.  Absent evidence

that the employer and employee understood that the fixed weekly salary included overtime hours, a court will find that the weekly salary covered only the first 40 hours. *See Pastor*, 2017 WL 5625556, at \*2-3; *Pinovi*, 2015 WL 4126872, at \*4-5; *Amaya*, 2012 WL 130425, at \*9; *cf. Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335, 338 (S.D.N.Y. 2005) (finding that the FLSA's rebuttable presumption had been overcome where the plaintiff conceded that his salary covered 50 hours of work).

Although a plaintiff may be "entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the [NYLL], [he or she] may not recover twice." *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08cv3725 (DC), 2010 WL 4159391, at \*3 (S.D.N.Y. Sept. 30, 2010). Instead, "[w]here a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages." *Wicaksono v. XYZ 48 Corp.*, No. 10cv3635 (LAK) (JCF), 2011 WL 2022644, at \*3 (S.D.N.Y. May 2, 2011) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2011 WL 2038973 (May 24, 2011). Accordingly, when calculating minimum-wage damages, the higher of either the federal or the New York minimum wage should be used for any period covered by both statutes. *Id.*

E.     **Spread-of-Hours Pay Pursuant to the NYLL**

Under the NYLL (but not the FLSA), in addition to receiving damages for unpaid regular wages and overtime, an employee earning the minimum wage is entitled to receive "spread-of-hours" pay, which is "one hour's pay at the basic minimum hourly wage rate" for any workday that lasts longer than 10 hours. 12 N.Y.C.R.R. § 142-2.4(a); *see also Santillan*, 822 F. Supp. 2d at 298-99 ("spread-of-hours pay is only covered under New York Labor Law, and not the FLSA . . . ."). "Spread-of-hours compensation is calculated by multiplying the minimum wage

Case 1:15-cv-10186-ER-DCF   Document 78   Filed 05/17/21   Page 22 of 52

by the number of days an employee worked more than [10] hours." *Cabrera v. 1560 Chirp Corp.*, No. 15cv8194 (TPG) (DF), 2017 WL 1289349, at *6 (S.D.N.Y. Mar. 6, 2017), *report and recommendation adopted*, 2017 WL 1314123 (Apr. 6, 2017) (citation omitted); *see also* 12 N.Y.C.R.R. § 146-1.6.  Entitlement to spread-of-hours pay does not extend to employees whose regular rate is above the statutory minimum wage.  *Williams v. Tri-State Biodiesel, L.L.C.*, No. 13cv5041 (GWG), 2015 WL 305362, at *16-17 (S.D.N.Y. Jan. 23, 2015); *Baltierra v. Advantage Pest Control Co.,* No. 14cv5917 (AJP), 2015 WL 5474093, at *6 (S.D.N.Y. Sept. 18, 2015).

### F.    Liquidated Damages Pursuant to the FLSA and the NYLL

In addition to allowing recovery for unpaid minimum wages and overtime compensation, the FLSA provides for the recovery of liquidated damages.  *See* 29 U.S.C. § 216(b).  Under the statute, a plaintiff is entitled to recover liquidated damages in an amount equal to the amount of unpaid wages and overtime compensation that the plaintiff was improperly denied, unless the employer demonstrates that it acted in good faith and had a reasonable basis for believing that it had not violated the FLSA.  *See id.* (providing that plaintiff-employees who prevail under either Section 206 or 207 of the FLSA are entitled to recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and . . . an additional equal amount as liquidated damages"); *see also* 29 U.S.C. § 260 (mandating that an employer pay liquidated damages unless the employer demonstrates that he was acting in "good faith" and "had reasonable grounds for believing" that he was not acting in violation of the FLSA); *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014) (adopting report and recommendation).

22

"As the Second Circuit has observed, 'the employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness. . . . The burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and double damages are the norm, single damages the exception.'" *See Galeana*, 120 F. Supp. 3d at 317 (quoting *Reich*, 121 F.3d at 71 (other internal quotation marks and citations omitted)); *Cao*, 2010 WL 4159391, at *5; *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 261 (S.D.N.Y. 2008); *see also* 29 U.S.C. § 260.

The NYLL also provides for the recovery of liquidated damages, *see* N.Y. Lab. Law § 663(1), and while, prior to April 9, 2011, liquidated damages were awarded at the rate of 25 percent of the unpaid wages, an amendment to the NYLL, effective as of that date, increased the award to a rate of 100 percent of unpaid wages. *Wimbush v. L.I.C. Pet Transp. Inc.*, No. 16cv5363 (PAE) (KNF), 2018 WL 3388296, at *4 (S.D.N.Y. July 12, 2018). Although courts within this Circuit were previously split on the question of whether a plaintiff could recover liquidated damages under both the FLSA and the NYLL, *see Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 60 (2d Cir. 2016) (summary order), the Second Circuit has since clarified that double recovery is not permitted, *id.*; *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (interpreting the NYLL and FLSA as "not allowing duplicative liquidated damages for the same course of conduct," and holding that "plaintiff should receive the larger of the two liquidated damages awards").

G.     **New York State Wage Notice Requirements**

1.     **Wage Statements**

Pursuant to New York's Wage Theft Prevention Act ("WTPA"), an amendment to the NYLL that was made effective as of April 9, 2011, employers are required to

> furnish each employee with a statement with every payment of
> wages, listing the following information:  (1) the dates of work
> covered by that payment of wages; (2) the employee's name;
> (3) the employer's name, address, and telephone number;
> (4) the rate or rates of pay and basis thereof; (5) gross wages;
> (6) deductions; (7) allowances, if any, claimed as part of the
> minimum wage; and (8) net wages.

*Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 475 (S.D.N.Y. 2015) (quoting N.Y. Lab.

Law § 195(3)); *see also Baltierra v. Advantage Pest Control Co.*, No. 14cv5917 (AJP), 2015 WL

5474093, at *10-11 (S.D.N.Y. Sept. 18, 2015).

For employer wage-statement violations occurring before February 27, 2015, "the WTPA

entitled employees to recover statutory damages of $100 per work week, not to exceed $2,500."

*Baltierra,* 2015 WL 5474093, at *10.  For employer wage-statement violations occurring after

February 27, 2015, the WTPA entitles employees to recover statutory damages of "[$250.00] for

each work day that the violations occurred . . . [,] but not to exceed a total of [$5,000.00]."  N.Y.

Lab. Law § 198(1-d).

Liquidated damages are not available to augment the statutory damages that may be

awarded under the WTPA for wage-statement violations.  *Java v. El Aguila Bar Restaurant*

*Corp.*, No. 16cv6691 (JLC), 2018 WL 1953186, at *13 n.18 (S.D.N.Y. Apr. 25, 2018).

### 2.    Wage Notices

In addition, the WTPA requires employers to provide a written wage notice "at the time

of hiring."  N.Y. Lab. Law § 195(1)(a).  The wage notice is required to be "in English and in the

language identified by each employee as the primary language of such employee," *id.*, and must

contain the following information:

> (1) the rate or rates of pay and basis thereof; (2) allowances, if any,
> claimed as part of the minimum wage, including tip, meal, or
> lodging allowances; (3) the regular pay day designated by the
> employer; (4) the employer's name; (5) any 'doing business as'

> names used by the employer; (6) the physical address of the
> employer's main office or principal place of business, and a
> mailing address if different; (7) the employer's telephone number;
> and (8) such other information as the commissioner deems material
> and necessary.

*Salinas*, 123 F. Supp. 3d at 474 (footnote omitted) (quoting N.Y. Lab. Law § 195(1)(a)).

Prior to February 27, 2015, the WTPA entitled employees to recover "statutory damages of $50 per week, not to exceed $2,500." *Baltierra*, 2015 WL 5474093, at *11. For employer violations of this requirement occurring after February 27, 2015, the WTPA entitles employees to recover statutory damages of "[$50.00] for each work day that the violations occurred . . . [,] but not to exceed a total of [$5,000.00]." N.Y. Lab. Law § 198(1-b).

As with wage-statement violations, liquidated damages may not be awarded with respect to wage-notice violations under the WTPA. *Java*, 2018 WL 1953186, at *13 n.18.

## H.   Prejudgment Interest

Generally, "[t]he decision to award prejudgment interest is discretionary, and is based on the need to fully compensate the wronged party, [the] fairness of the award, and the remedial purpose of the statute involved." *Najnin v. Dollar Mountain, Inc.*, No. 14cv5758 (WHP), 2015 WL 6125436, at *3 (S.D.N.Y. Sept. 25, 2015). Given that FLSA liquidated damages serve a compensatory, rather than punitive, purpose, "there is no need to employ pre-judgment interest to restore Plaintiffs to a position they would have otherwise enjoyed absent the wage-protection violation." *Cabrera v. 1560 Chirp Corp.*, No. 15cv8194 (TPG) (DF), 2017 WL 1289349, at *8 (S.D.N.Y. Mar. 6, 2017) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2017 WL 1314123 (Apr. 6, 2017). Thus, a plaintiff who recovers liquidated damages under the FLSA is not also entitled to prejudgment interest on his or her FLSA damages. *See, e.g.*, *id.*; *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48

(E.D.N.Y. 2015) ("'It is well settled that in an action for violations of the [FLSA] prejudgment interest may not be awarded in addition to liquidated damages.'" (quoting *Begum v. Ariba Disc., Inc.*, No. 12cv6620 (DLC) (KNF), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015)). As a result, "courts do not award statutory prejudgment interest on any portion of the recovery for which liquidated damages were awarded under the FLSA." *Andrade v. 168 First Ave Restaurant Ltd.*, No. 14cv8268 (JPO) (AJP), 2016 WL 3141567, at *9 n.7 (S.D.N.Y. June 3, 2016), *report and recommendation adopted*, 2016 WL 3948101 (July 19, 2016).

Based on a provision added to the NYLL in 2011, however, a plaintiff who recovers liquidated damages under the NYLL is also entitled to prejudgment interest. *See Hernandez v. Jrpac Inc.*, No. 14cv4176 (PAE), 2016 WL 3248493, at *35 (S.D.N.Y. June 9, 2016) (noting that, under the NYLL, a plaintiff may receive both an "award of prejudgment interest alongside a liquidated damages award" (citing N.Y. Lab. Law § 198(1-a))); *see also Castillo v. RV Transp., Inc.*, No. 15cv0527 (LGS), 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016). Under the state law, though, "[p]rejudgment interest is calculated . . . [only] on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. East Manor USA Inc.*, No. 10cv4313 (NG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013) (citation omitted), *report and recommendation adopted*, 2013 WL 2152176 (May 17, 2013). Prejudgment should also not be calculated on any statutory damages that may be awarded to a plaintiff under the WTPA, for wage statement or wage notice violations. *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017).

"Pursuant to [New York] state law, a successful plaintiff may receive prejudgment interest at a rate of nine percent per year." *Najnin*, 2015 WL 6125436, at *4; *see also* N.Y.

C.P.L.R. §§ 5001, 5004.  As to the date from which interest should be found to run,

"Section 5001(b) sets forth two methods of calculating prejudgment interest[]":

> First, interest may be calculated from 'the earliest ascertainable
> date the cause of action existed,' N.Y. C.P.L.R. § 5001(b).
> However, '[w]here . . . damages were incurred at various times,
> interest shall be computed upon each item from the date it was
> incurred or upon all of the damages from a single reasonable
> intermediate date.' *Id.*

*Alvarez v. 215 N. Ave. Corp.*, No. 13cv0049 (NSR) (PED), 2015 WL 3855285, at *3 (S.D.N.Y.

June 19, 2015) (adopting report and recommendation).  It is within the court's "'wide

discretion'" to "'determin[e] a reasonable date from which to award prejudgment interest.'"  *Id*.

(quoting *Conway v. Icahn & Co.,* 16 F.3d 504, 512 (2d Cir. 1994)).

### I.     Joint and Several Liability of "Employers" Under the FLSA and NYLL

The FLSA imposes liability on "employers," a group that is "broadly define[d] [to

include] 'any person acting directly or indirectly in the interest of an employer in relation to an

employee.'"  *Doo Nam Yang*, 427 F. Supp. 2d at 342-43 (quoting 29 U.S.C. § 203(d)).  "The

definition of 'employer' is similarly expansive under New York law, encompassing any 'person

employing any [employee].'"  *Id*. (quoting N.Y. Lab. Law §§ 2(6)).  To determine whether a

party qualifies as an "employer" under both statutes' "generous definitions," the relevant inquiry

is "whether the alleged employer possessed the power to control the workers in question, . . .

with an eye to the economic reality presented by the facts of each case."  *Id*. (quoting *Herman v.

RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir. 1999)).

"[W]hen examining the 'economic reality' of a particular situation," courts will evaluate

various factors, none of which, individually, is dispositive.  *Id.*  These factors include "'whether

the alleged employer (1) had the power to hire and fire the employees, (2) supervised and

controlled employee work schedules or conditions of employment, (3) determined the rate and

method of payment, and (4) maintained employment records.'" *Id.* (quoting *Herman,* 172 F.3d at 139). Further, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, [and is therefore] jointly and severally liable under the FLSA for unpaid wages." *Id*. (internal quotation marks and citation omitted) (finding defendants jointly and severally liable under both the FLSA and the NYLL).

### J.   <u>Attorneys' Fees and Costs</u>

"Under both the FLSA and the NYLL, a prevailing plaintiff may recover [his or] her reasonable attorney's fees and costs." *Najnin*, 2015 WL 6125436, at *4; s*ee* 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a). The court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award. *See Barfield v. New York City Health & Hosp. Corp.*, 537 F.3d 132, 151-52 (2d Cir. 2008). As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation creates a "'presumptively reasonable fee'" (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008))). The party seeking fees bears the burden of demonstrating that its requested fees are reasonable, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984), and must provide the court with sufficient information to assess the fee application, *see New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

For purposes of the lodestar, an attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of

reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11.  Although

the fee applicant has the burden of demonstrating prevailing market rates for comparable work,

*see Broome v. Biondi*, 17 F. Supp. 2d 230, 237 (S.D.N.Y. 1997), the court may also apply its

"own knowledge" of rates charged in the community in assessing the reasonableness of the rates

sought, *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir.

1987); *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450

F.3d 91, 96-7 (2d Cir. 2006).

In *Arbor Hill*, the Second Circuit emphasized that the "reasonable hourly rate is the rate a

paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190.  In assessing whether an

hourly rate is reasonable, the court should "bear in mind that a reasonable, paying client wishes

to spend the minimum necessary to litigate the case effectively." *Id.*  When an attorney's

requested hourly rate is higher than rates found to be reasonable in the relevant market, it is

within the court's discretion to reduce the requested rate.  *See Savino v. Computer Credit, Inc.*,

164 F.3d 81, 87 (2d Cir. 1998).

As for the time component of the lodestar, an attorney's stated number of hours should be

reduced by the court where it is greater than required to litigate the case effectively, *see*

*Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (holding that

time component should not reflect excessive hours), or where the attorney's proffered time

records are vague or otherwise inadequate to enable the court to determine the reasonableness of

the work performed or the time expended, *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983);

*Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, No. 10cv05256

(KMW) (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012) (finding that vague time

records were insufficient to substantiate claimed expenditures of time; collecting cases).  In

29

determining whether an excessive amount of time was expended on the matter, the court may also consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with the litigation, *see Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), and whether the work was complicated or straightforward, *see Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, No. 13cv3061 (JGK), 2014 WL 2624759, at *6 (S.D.N.Y. June 10, 2014) (considering "the straightforward nature of the work performed [and] the relative simplicity of the issues involved" (internal quotation marks and citations omitted)).

As the party seeking attorneys' fees bears the burden of demonstrating that its claimed fees are reasonable, *Thai-Lao Lignite (Thailand)*, 2012 WL 5816878, at *3 (citations omitted), it must submit, in support of its request for fees, contemporaneous time records that "specify, for each [timekeeper], the date, the hours expended, and the nature of the work done," *id.* (quoting *Carey*, 711 F.2d at 1148) (internal quotation marks omitted).  Where an attorney's time records are inadequate to enable the court to determine whether the time expended was reasonable, a percentage reduction may be applied as a "practical means of trimming fat" from a fee application.  *Carey*, 711 F.2d at 1146.

In addition to the lodestar amount, attorneys' fees may include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted).  These expenses, or "costs," may include photocopying, travel, telephone costs, and postage, *Kuzma v. Internal Revenue Serv.*, 821 F.2d 930, 933-34 (2d Cir. 1987), as well as filing fees and reasonable process-server fees, *Rosendo v. Everbrighten Inc.*, No. 13cv7256 (JGK) (FM), 2015

WL 1600057, at *9 (S.D.N.Y. Apr. 7, 2015), *report and recommendation adopted*, 2015

WL 4557147 (July 28, 2015).

## II.   PLAINTIFF'S DAMAGES CLAIMS

As a threshold matter, in the consideration of damages, this Court finds Plaintiff's

submissions – while somewhat problematic in the ways discussed above – are ultimately

sufficient to meet his burden of proof to establish, to a reasonable certainty, the amount of

damages to which he is entitled, such that a hearing on damages is not required.  *See Fustok*, 873

F.2d at 40 (noting that the district court has the discretion to determine whether a hearing is

necessary).  As noted above, in the context of a default, where the defendant has neither provided

any employment records, nor otherwise rebutted the plaintiff's damages claims, it is sufficient

for a plaintiff to rely on his "recollection alone" to establish the hours he worked and the rates he

should have been paid.  *Santillan*, 822 F. Supp. 2d at 294 (internal quotation marks and citations

omitted).

In this case, this Court accepts as true, for purposes of this inquest, the well-pleaded

factual allegations presented in the Amended Complaint regarding Plaintiff's hours and rates of

pay, to the extent they have been sufficiently clarified by the recollections set out in Plaintiff's

two sworn Affidavits and would not result in damages that would exceed the damages sought in

Plaintiff's pleading.  *See* Fed. R. Civ. P. 54(c).  This Court also accepts as true Plaintiff's well-

pleaded allegations regarding the corporate defendants' operation of the business in which

Plaintiff was employed, and regarding the individual defendants' roles in, *inter alia*, hiring and

firing workers, setting employee work schedules, and determining the type of work assigned (*see*

*generally* Am. Compl. ¶¶ 9-24), and finds that these allegations are sufficient to establish that all

Defendants qualified as Plaintiff's "employers" under the FLSA and NYLL, such that they should be held jointly and severally liable for any damages assessed in this case.

### A.    Unpaid Overtime Compensation

As Plaintiff states that he was paid at a different rate for each of two different periods of his employment, this Court will consider any damages he should be awarded for each of those periods, separately.  As set out below, both the FLSA and the NYLL would entitle Plaintiff to recover unpaid overtime pay at the same rate.  The NYLL, however, with its six-year statute of limitations, would cover the entire period of Plaintiff's employment, without the Court's needing to reach the question of whether Plaintiff has adequately pleaded "willfulness" under the FLSA, so as to be able to take advantage of the "willfulness" exception to the statute's two-year limitations period.  *See Whiteside*, 2021 WL 1619488, at *3.  As Plaintiff is entitled to recover under the statute that would afford him the greatest relief, *see, e.g.*, *Wicaksono*, 2011 WL 2022644, at *3, this Court will calculate Plaintiff's damages under the NYLL.

### 1.    The First Period of Plaintiff's Employment:
### From Approximately June 20, 2012 to October 31, 2015

As summarized above, Plaintiff asserts in both his Amended Complaint and in his two submitted Affidavits that, for the period from on or about June 20, 2012 to October 31, 2015, he was paid at the flat rate of $560 per week.  (Am. Compl. ¶ 32; 9/6/18 Wen Aff. ¶ 11; 2/5/21 Wen Aff. ¶ 13.)

Given the absence of any evidence of an agreement between the parties that Plaintiff's weekly salary would cover the full hours that he worked each week, and Plaintiff's assertion that he did not understand his salary to be compensating him "for any hours in excess of forty (40) each week" (2/5/21 Wen Aff. ¶ 15), this Court presumes that Plaintiff's weekly salary covered only the first 40 hours of his work, *see Pastor*, 2017 WL 5625556, at *2-3; *Pinovi*, 2015 WL

4126872, at *4-5; *Amaya*, 2012 WL 130425, at *9.  This means that, at the rate of $560 per week, Plaintiff's base hourly rate was $14 per hour, which was more than the applicable federal and New York State minimum wage rates in effect at the relevant time.  (*See* Discussion, *supra*, at Section I(D).)  As Plaintiff's base hourly rate for this period was higher than the applicable federal and state minimum wage rates, he is entitled to receive only any unpaid overtime pay (*i.e.*, pay at the rate of one and one-half times his base rate of $14 per hour) pursuant to both the FLSA, *see* 29 U.S.C. § 207(a)(1), and the NYLL, *see* 12 N.Y.C.R.R. § 142-2.2.

As alleged in the Amended Complaint and stated in both of Plaintiff's Affidavits, Plaintiff worked for Defendants seven days per week during the roughly six-and-a-half-month period from on or about June 20, 2012 through December 31, 2012.  Specifically, based on his second Affidavit, Plaintiff has clarified that he worked from 6:00 p.m. to 8:00 a.m. the next day (*i.e.*, 14 hours a day) on Mondays, Tuesdays, Wednesdays, Fridays, and Saturdays, and from 10 p.m. to 8 a.m. the next day (*i.e.*, 10 hours a day) on Thursdays and Sundays, for a total of 90 hours per week.  (*See* 2/5/21 Wen Aff. ¶ 6; *see also* Am. Compl. ¶ 28; 9/6/18 Wen Aff. ¶¶ 6-7.)  As his weekly pay for this period is presumed to have covered only the first 40 hours of his work in a given week, Plaintiff should have received $21 per hour (*i.e.*, $14 x 1.5) for the remaining 50 hours that he worked each week.  For this period, Plaintiff is therefore entitled to recover **$29,085.00** in unpaid overtime compensation (calculated as $21/hour x 50 hours/week x 27.7 weeks).[6]

---

[6] As noted above, Plaintiff alleges that, throughout the course of his employment, he was "not given a fixed time for lunch or dinner," and, instead, was given 10 to 15 minutes "to buy dinner and eat outside."  (Am. Compl. ¶¶ 35, 36; *see also* 9/6/18 Wen Aff. ¶ 10.)  When calculating damages under the NYLL, "all of the time worked during a continuous workday is compensable, save for bona fide meal breaks."  *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 499 (S.D.N.Y. 2017) (citing *Hernandez v. Jrpac Inc.*, No. 14cv4176 (PAE), 2016 WL 3248493, at *27 (S.D.N.Y. June 9, 2016)).  To qualify as a "bona fide meal period, '[t]he

For the additional two years and nine months that fell within the first period of his employment – in other words, for the time from on or about January 1, 2013 through October 31, 2015 – Plaintiff has consistently contended that he continued to work seven days per week, but his most recently submitted Affidavit alters the allegations contained both in the Amended Complaint and his first Affidavit regarding the number of hours he worked.  Initially, Plaintiff alleged that he worked the same number of hours as he did during the first part of this period – *i.e.*, 90 hours per week.  (Am. Compl. ¶ 28; 9/6/18 Wen Aff. ¶¶ 6-7.)  As noted above, however, Plaintiff suddenly now asserts that, during this latter portion of the period, he actually worked 94 hours per week:  specifically, from 6:00 p.m. through 8:00 a.m. the next day (*i.e.*, 14 hours a day) on Mondays, Tuesdays, Wednesdays, Thursdays, Fridays, and Sundays, and from 10:00 p.m. to 8:00 a.m. the next day (*i.e.*, an additional 10 hours) on Saturdays.  (2/5/21 Wen Aff. ¶ 7.)

Upon a defendant's default, the Court may not award amounts that exceed that which is claimed in a plaintiff's pleading. Fed. R. Civ. P. 54(c).  Certainly, if a plaintiff were to plead that he or she was owed only one hour per week of overtime pay, and then go on to assert, in the context of a damages inquest, that he or she was actually owed 10 hours per week of such pay, the Court would disallow the greater recovery.  The same principle should apply here.  As nothing in the Amended Complaint would have put Defendants on notice that Plaintiff would be seeking an additional four hours of overtime pay per week (plus liquidated damages on that amount), for a substantial period of time, I recommend that Plaintiff's overtime damages for the

---

employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period.'" *Gamero*, 272 F. Supp. 3d at 499 (citing *Salinas*, 123 F. Supp. 3d at 472).  "Rest periods of short duration," however, "running from 5 minutes to about 20 minutes . . . are customarily paid for as working time." *Gamero*, 272 F. Supp. 3d at 499.  As Plaintiff has stated that his meal breaks were less than 20 minutes long, this Court will consider those breaks to be compensable as working hours for purposes of a damages calculation.

period from January 1, 2013 to October 31, 2015 be capped at an amount based on the 90 hours

per week of work that Plaintiff alleged in his Amended Complaint.  Accordingly, for this period

of time, I recommend that Plaintiff be awarded an additional **$154,980.00** in unpaid overtime

compensation (calculated as $21.00/hour x 50 hours/week x 147.6 weeks).

In sum, for the entire period for which Plaintiff was paid $560 per week, I recommend

that he be awarded **$184,065.00** in unpaid overtime pay.

### 2.  The Second Period of Plaintiff's Employment:
### From Approximately November 1, 2015 to February 5, 2016

Plaintiff asserts in both his Amended Complaint and in both of his supporting Affidavits

that, for the period from on or about November 1, 2015 to February 5, 2016 (the end of his

employment), he was paid at the flat rate of $480 per week.  (Am. Compl. ¶ 33; 9/6/18 Wen Aff.

¶ 12; 2/5/21 Wen Aff. ¶ 14.)  Assuming, once again, that this amount was intended to

compensate Plaintiff for his first 40 hours of work each week, Plaintiff's base hourly rate during

this period was $12 per hour, which was again more than the applicable federal and state

minimum wage for the period.  (*See* Discussion, *supra*, at Section I(D).)

As for the hours he worked during this time frame, Plaintiff has again diverged from the

allegations in his pleading, but, in this instance, I recommend that the Court base its damages

calculations on Plaintiff's most recent filing, as the statements therein – if accepted only to the

extent that Plaintiff has adequately remedied any initial lack of clarity in his underlying factual

allegations – would not lead to an award in excess of what Defendants could have anticipated

from the pleading.

In his Amended Complaint and initial Affidavit, Plaintiff alleged that, throughout this

second period of his employment, he worked six days per week, for a total of approximately

72 hours per week (*see* Am. Compl. ¶¶ 30-31; 9/6/18 Wen Aff. ¶¶ 8-9) – a total that, as noted

above, appears to have been based on a mathematical error (*see* Background, *supra*, at

Section B).  Further, as also noted above, both Plaintiff's Amended Complaint and his first

Affidavit were unclear as to which days he worked, as, in both documents, he stated that he

worked 14 hours per day on "Mondays, Tuesdays, Wednesdays, Fridays, and *Saturdays*,"

(Am. Compl. ¶ 30(a) (emphasis added); *accord* 9/6/18 Wen Aff. ¶ 8(a)), and 10 hours per day on

"Thursdays and *Saturdays*" (Am. Compl. ¶30(b) (emphasis added); *accord* 9/6/18 Wen Aff.

¶ 8(b)), with "one day off each week" that was "not fixed" (Am Compl ¶ 30(c); *accord* 9/6/18

Wen Aff. ¶ 8(c)).

     In his second submitted Affidavit, Plaintiff abandons his allegation that he worked

72 hours per week throughout this period of his employment.  Rather, he now asserts that he

worked 80 hours per week (*i.e.*, 14 hours a day, for five days, plus 10 hours a day, for one day)

for the two months from November 1, 2015 through December 31, 2015 (*see* 2/5/21 Wen Aff.

¶ 8); that he then worked 70 hours per week (*i.e.*, 14 hours a day, for five days) for the

approximately two weeks from January 1, 2016 to January 15, 2016 (*see id*. ¶ 9); and, finally,

that he only worked 56 hours per week (*i.e.*, 14 hours a day, for four days) for the approximately

three weeks from January 16, 2016 to the end of his employment on February 5, 2016 (*see id*.

¶ 10).

     Taking these three sub-periods in turn, only the first is problematic – not so much for the

reason that Plaintiff now contends that he worked 80 hours per week (which, as previously

discussed, would be mathematically correct, if he worked five 14-hour days and one 10-hour

day), but because Plaintiff has not adequately addressed the confusion in his pleading and first

Affidavit regarding the days that he worked for Defendants.  Specifically, in his second

Affidavit, purportedly submitted for the very purpose of "clarifying [his] working days" (2/5/21

Wen Aff. ¶ 5), Plaintiff now asserts that, for this period, he worked 14 hours per day on

"Mondays, Tuesdays, Wednesdays, Fridays, and *Sundays*," and 10 hours "on either Thursday or

*Sunday*, depending on the week." (*Id*. ¶ 8 (emphases added).)[7]  To address this continued

confusion, this Court proposes eliminating the duplicative "Sunday" from the category of days

with the higher number of work hours, and crediting Plaintiff only with having worked 14 hours

on Mondays, Tuesdays, Wednesdays, and Fridays, plus another 10 hours on either Thursday or

Sunday, for a total of 66 hours per week.

      With this adjustment, I recommend that, for this entire second period of his employment,

Plaintiff be awarded **$5,940.00** in damages for unpaid overtime compensation, calculated based

on the overtime rate of $18 per hour (*i.e.*, $12 x 1.5), as follows:

- For the sub-period from November 1, 2015 through December 31, 2015, for 26 hours of overtime per week, the amount of **$4,024.80** ($18/hour x 26 hours/week x 8.6 weeks);

- For the sub-period from January 1, 2016 to January 15, 2016, for 30 hours of overtime per week, the amount of **$1,080.00** ($18/hour x 30 hours/week x 2 weeks); and

- For the sub-period from January 16, 2016 to February 5, 2016, for 16 hours of overtime per week, the amount of **$835.20** ($18/hour x 16 hours/week x 2.9 weeks).

      Adding together the amounts of unpaid overtime compensation due for the two periods of

Plaintiff's employment (*i.e.*, $184,065.00 for the first period, plus $5,940.00 for the second

---

[7] As this Court has noted, while Plaintiff's counsel submitted a subsequent Declaration requesting that the first of these "'Sundays' [] be stricken and replaced with 'Saturdays'" (2/23/21 Schweitzer Decl. ¶ 1), counsel neither stated in that Declaration that it was made on personal knowledge, nor set forth any facts from which such knowledge could be deduced (*see* Background, *supra*, at Section B), and I therefore recommend that counsel's statements not be credited to modify the facts set out by Plaintiff.

period) yields an overall total of **$190,005.00**, which I recommend be included in Plaintiff's damages award.

### B.    Spread-of-Hours Compensation

As set out above, Plaintiff claimed – both in his Amended Complaint and his initial submissions in support of damages – that he was entitled to unpaid spread-of-hours compensation, under the NYLL, for the days in which he worked more than 10 hours.  As noted, however, an employee who makes more than the minimum wage is not entitled to such compensation (*see* Discussion, *supra*, at Section I(E); *see also Baltierra,* 2015 WL 5474093, at *6), and Plaintiff's base rate of pay – which this Court has calculated as $14 per hour and then $12 per hour – exceeded the minimum wage rate at all relevant times.  Accordingly, as Plaintiff's counsel has now acknowledged (*see* 2/10/21 Schweitzer Decl. ¶ 20), Plaintiff is not entitled to, and should not be awarded, any spread spread-of-hours damages.

### C.    Liquidated Damages

As discussed above, both the FLSA and the NYLL provide for the recovery of liquidated damages on unpaid overtime wages.  Indeed, both statutes mandate that the Court award such liquidated damages to a prevailing plaintiff, unless the defendant employer demonstrates that it acted in good faith or had a reasonable basis to believe that it was acting in compliance with the law.  (*See* Discussion, *supra*, at Section (I)(F).)  Here, given Defendants' default, they have not met their burden of proving that they acted in good faith, *see Galeana*, 120 F. Supp. 3d at 317, and thus liquidated damages are available under the provisions of both statutes, 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).

As this Court has determined that Plaintiff is entitled to overtime damages under the NYLL, which provides a longer statute of limitations than the FLSA and thus arguably affords

greater relief in this case, I recommend that Plaintiff also be awarded liquidated damages under the NYLL.  *See, e.g.*, *Morales v. Mw Bronx, Inc.*, No. 15cv6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016).  Under the NYLL, Plaintiff is entitled to liquidated damages in the amount of 100 percent of his unpaid wages, such that he should be awarded **$190,005.00** in liquidated damages.

### D.   <u>Prejudgment Interest</u>

As set out above, the NYLL provides that a plaintiff may recover both liquidated damages and prejudgment interest on an award of unpaid wages.  *See Hernandez*, 2016 WL 3248493, at *35; *Castillo*, 2016 WL 1417848, at *3.  As also noted above, prejudgment interest on damages under the NYLL is awarded at a rate of nine percent per year, *Najnin*, 2015 WL 6125436, at *4; N.Y.C.P.L.R. § 5004, and such interest may be calculated from either the "earliest ascertainable date the cause of action existed" or "from a single reasonable intermediate date," where damages were incurred at various times, N.Y.C.P.L.R. § 5001(b).  "The midpoint of the plaintiff's employment within the limitations period is commonly considered a reasonable choice."  *Najnin*, 2015 WL 6125436, at *4 (citing *Tackie v. Keff Enterprises, LLC*, No. 14cv2074 (JPO), 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014)).

Here, if Plaintiff is awarded damages for unpaid wages in the amount of $190,005.00, he would be entitled to prejudgment interest on that amount.  As an initial matter, this Court calculates such prejudgment interest from the midpoint date of Plaintiff's employment (April 13, 2014), to the date of his most recent damages submissions (February 11, 2021).  Applying the prejudgment interest rate of nine percent per year to this principal amount yields prejudgment interest in the amount of **$116,938.97** ($190,005.00 x .09 x (2496/365)).  I recommend that Plaintiff be awarded that amount in prejudgment interest on damages arising out of his wage

39

claims, up to the date of Plaintiff's most recent damages submissions, with additional interest to be calculated by the Clerk of Court, at a rate of nine percent per annum, from February 11, 2021 through the date entry of final judgment.

      **E.**      **Statutory Damages for Statement and Wage Notice Violations**

Plaintiff is also entitled to recover for wage-statement and wage-notice violations under the NYLL – specifically, under the WTPA.  For purposes of this inquest, this Court accepts as true Plaintiff's assertion that he did not receive any wage statements between June 20, 2012 and February 5, 2016.  (Am. Compl. ¶¶ 96-98; 9/6/18 Wen Aff. ¶¶ 17, 18).  Although, in his supporting Declaration, Troy asserts that Plaintiff is entitled to receive up to $2,500 for both wage notice and wage statement violations (*see* 11/27/18 Troy Decl. ¶ 15(j),(k)), this Court notes that, in the Amended Complaint, Plaintiff requested $5,000 for each type of violation.  (Am. Compl. ¶¶ 99, 103.)

As laid out above, the WTPA imposes statutory damages of $250 per work day, capped at $5,000, for the failure to provide employees with compliant wage statements, where the violations occurred after February 27, 2015.  (N.Y. Lab. Law § 198(1-d); *see also* Discussion, *supra*, at Section I(G)(1).)  As Plaintiff was employed for more than 20 work days after February 27, 2015, he is entitled to the maximum of $5,000 in statutory damages for wage-notice violations.

This Court similarly accepts as true Plaintiff's assertion that he never received wage notices.  (Am. Compl. ¶¶ 96-98; 9/6/18 Wen Aff. ¶¶ 17, 18).  Plaintiff is therefore entitled to recover statutory damages for this violation in the amount of $50 for each work day, "not to exceed a total of [$5,000]."  (N.Y. Lab. Law. § 198(1-b); *see also* Discussion, *supra*, at Section I(G)(2).)  Even though Plaintiff was initially hired prior to February 27, 2015, he worked

more than 100 days after that date, entitling him to the maximum of $5,000 in statutory damages for wage-notice violations. *See Sanchez v. Jyp Foods Inc.*, No. 16cv4472 (JLC), 2018 WL 4502008, at *11 (S.D.N.Y. Sept. 20, 2018); *Cabrera*, 2017 WL 1289349, at *13.

I therefore recommend that Plaintiff be awarded **$10,000** in statutory damages for Defendants' failure to provide him with both wage statements and wage notices.

## III.   ATTORNEYS' FEES AND COSTS

Plaintiff seeks $35,317.00 in attorneys' fees for 70.86 hours of work performed by counsel in connection with this action. (*See* 6/19/19 Troy Decl. ¶¶ 36-37)[8]  Plaintiff also seeks litigation costs in the amount of $804.38. (*See id.*)  As discussed below, this Court finds both the requested fees and costs to be excessive.  For the following reasons, I recommend that Plaintiff be awarded $13,594.05 in attorneys' fees and $400.00 in costs.

### A.   Reasonable Hourly Rates

In this case, Plaintiff has been represented by attorneys John Troy, Esq. ("Troy"), George Kibum Byun, Esq. ("Byun") and Schweitzer, of the law firm of Troy Law PLLC ("Troy Law," or the "Firm").  (*See* Pl. Fee Mem.)

#### 1.   Troy

In his submitted Declaration, Troy represents that he graduated from Dickinson School of Law in 1985 and now serves as the principal attorney of the Firm.  (6/19/19 Troy Decl. ¶ 13.) He states that he was admitted to the bar in 1989 and, since opening his own law firm, has specialized in wage-and-hour cases like this one.  (*Id.* ¶¶ 13-14.)  According to Troy, Troy Law

---

[8] In a "Statement of Damages" filed on November 27, 2018, Plaintiff asked for $27,644.38 in "Attorney's Fees and Costs" (*see* Dkt. 31), but, by the date of Plaintiff's later motion in support of a fee award, the amount sought had increased, presumably because counsel had expended additional time on the case and incurred additional costs.

is "one of the largest firms [by] case load," and he lists hundreds of wage-and-hour cases in

which he is serving, or has served, as counsel of record.  (*Id.* ¶¶ 16-19.)  For his own work, Troy

requests a fee award at the hourly rate of $550 (*id.* ¶ 24), and he states that this hourly rate has

been "previously approved in this district for similar matters" (Pl. Fee Mem., at 5).  Troy,

however, has not cited any case in this District in which *he* has previously been awarded a rate of

$550 per hour, and in fact, he only states, in his Declaration, that he has "previously been

awarded $400.00 per hour in fees . . . ."  (6/19/19 Troy Decl. ¶ 23.)

A year ago, in *Lin v. La Vie En Schezuan Restaurant Corp.*, No. 15cv09507 (DF), 2020

WL 1819941 (S.D.N.Y. Apr. 9, 2020), this Court examined a fee application from Troy Law,

and rejected Troy's implicit suggestion, made at that time, that he had generally been awarded a

rate of $550 per hour, *see id.*, at *3.  After noting that courts in this District had recently

determined that a reasonable rate for senior attorneys handling wage-and-hour cases, in this

market, typically ranged from $300 to $400 per hour, *see id.* (citing *Shanfa Li v. Chinatown

Take-Out Inc.*, No. 16cv7787 (JCM), 2019 WL 3715086, at *6 (S.D.N.Y. Aug. 7, 2019)

(collecting cases)), this Court further observed that Troy, himself, had not generally earned

judicial approval of a rate at the top end of that range.  Indeed, this Court noted that, while a few

courts in the Eastern District of New York had chosen to award Troy $375 per hour for his work,

*see, e.g., Singh v. A & A Market Plaza, Inc.*, No. CV 15-7396 (AKT), 2019 WL 4861882, at *9

(E.D.N.Y. Sept. 30, 2019); *Suarez Castaneda v. F&R Cleaning Servs. Corp.*, No. 17-cv-7603

(SJ) (PK), 2019 WL 5694118, at *15 (E.D.N.Y. Mar. 15, 2019), *report and recommendation

adopted*, 2019 WL 5693768 (July 8, 2019), other courts both there and in this District had, only a

few years earlier (and within the time frame relevant to the work performed on this case), opted

to award Troy fees at the rate of $300 per hour – at the very low end of the identified range, *see,*

*e.g.*, *Hui Luo v. L & S Acupuncture, P.C.*, No. 14 Civ. 1003 (BMC), 2015 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015), *aff'd*, 649 F. App'x 1 (2d Cir. 2016); *Shanfa,* 2019 WL 3715086, at *6; *Guo v. Tommy's Sushi, Inc.*, No. 14cv3964 (PAE), 2016 WL 452319, at *5 (S.D.N.Y. Feb. 5, 2016).

In this case, this Court notes that the Docket of this action reflects numerous filing deficiencies, and, as recited above, Troy Law's submissions have been riddled with careless assertions, inconsistencies, and obvious errors. The problems with the Firm's papers range from the matters as simple as counsel's failing to proofread submissions for Plaintiff's correct gender pronouns, to matters as serious as presenting conflicting and, at times, incoherent facts regarding matters as basic as the days and hours that Plaintiff worked. The Firm also failed to submit referenced damages spreadsheets; requested different amounts of statutory damages in different filings; and sought recovery for a category of damages to which Plaintiff is plainly not entitled, as a matter of law.

Moreover, Troy's time records reflect that, more often than not, he performed work that could readily have been performed by a more junior attorney or even a paralegal. Indeed, many – if not most – of Troy's time entries for this case record his performance of lower-level tasks, such as electronic research, seemingly relating to Defendants' business and assets (*see* Dkt. 35-1, at 1-2 (listing 15 separate time entries for some form of what this Court assumes was online research)); the initial drafting of pleadings and other Court filings (*see id.*, at 1-3 (listing 12 time entries for drafting documents, including a damages calculation chart, pleadings, a request to Defendants for a waiver of service, a certificate of default, a proposed default judgment, and notices of motion)); and largely ministerial matters, such as creating a binder, mailing waiver-of-service forms to Defendants, setting reminders of due dates for effecting

service and for the expected return of service, preparing copies of documents, and scanning

documents (*see, e.g.*, *id.*, at 2 (listing four separate time entries, on 4/7/16, 12/19/16, 12/23/16,

and 1/9/17, for "Scan, Review for Accuracy and ECF Proof of Service")).

      "Courts frequently reduce fee requests where work that could have been handled by more

junior lawyers was instead performed by a senior partner," *Hitachi Data Sys. Credit Corp. v.*

*Precision Discovery, Inc.*, No. 17cv6851 (SHS), 2020 WL 5731953, at *3 (S.D.N.Y. Sept. 24,

2020) (citing *HTV Indus., Inc. v. Agarwal*, 317 F. Supp. 3d 707, 721 (S.D.N.Y. 2018)), either by

reducing a partner rate otherwise found to be reasonable, in specific instances where that partner

performed associate-level tasks, *see, e.g.*, *H.B. Automotive Group, Inc. v. Kia Motors America,*

*Inc.*, 13cv4441 (VEC) (DF), 2018 WL 4017698, at *7 (S.D.N.Y. Jul. 25, 2018) (reducing

attorney's hourly rate for specific time spent on junior-level tasks), *report and recommendation*

*adopted*, 2018 WL 4007636 (Aug. 22, 2018), or, where parsing through the time records for this

purpose would be impractical, by reducing the partner's rate in general or applying an overall

percentage reduction to the fees sought, *see, e.g.*, *HTV Indus.,* 2018 WL 2976013 (reducing total

fee award by 25% where senior counsel performed a substantial number of tasks that could have

been performed by a more junior attorney); *Harrell v. City of New York*, No. 14cv7246 (VEC)

(DF), 2017 WL 9538163, at *9 (S.D.N.Y. July 20, 2017) (noting that "legal research is generally

considered to be work that is capable of being performed by more junior attorneys and that

should not be billed at partner-level rates"), *report and recommendation adopted as modified on*

*other grounds*, 2017 WL 4119280 (Sept. 15, 2017); *Lane Crawford LLC v. Kelex Trading (CA)*

*Inc.*, No. 12cv9190 (GBD) (AJP), 2013 WL 6481354, at *10 (S.D.N.Y. Dec. 3, 2013) (finding

15% fee reduction to be warranted where, *inter alia*, attorney billed at $350 per hour for work

such as drafting standard forms of service and reviewing judge's rules), *report and recommendation adopted*, 2014 WL 1338065 (Apr. 3, 2014);

Here, in light of the poor quality of work that was reflected in many of Troy Law's filings, combined with the fact that Troy did not consistently perform work commensurate with his level of experience, this Court will adhere to its recent decision in *Lin*, and recommend that Troy be awarded the reduced rate of **$325 per hour** for his work on this case.[9]

### 2.   Byun

According to Troy, Byun received his law degree from Benjamin N. Cardozo School of Law in 2015 and, during the prosecution of this case, he served as a "managing associate" in the Firm.  (6/19/19 Troy Decl. ¶ 25.)  At the time of Plaintiff's fee application, Byun had three years of legal experience representing plaintiffs in employment cases, having practiced with Troy Law since October 2015.  (*Id*.)  Troy requests, in his Declaration, that the Court approve a rate of $350 per hour for Byun's work on this case.  (*Id*. ¶ 28.)

This rate is well above the market rate for associates with Byun's level of experience.  In the last few years, courts have awarded Byun an hourly rate between $150 and $200.  *See, e.g., Singh*, 2019 WL 4861882, at *9; *Zhong Fa Qin v. Sensation Neo Shanghai Cuisine, Inc.*, No. 15-CV-6399 (KAM), 2018 WL 4853041, at *3 (E.D.N.Y. Oct. 4, 2018); *Shanfa*, 2019 WL 3715086, at *6.  In *Lin*, this Court determined that an appropriate rate for Byun was **$160 per**

---

[9] The fact that Troy spent so much time engaged in non-partner-level work on this case points to a general problem in how the case was staffed.  Based on the submitted time records, Troy performed over 75 percent of the work on the case (leaving less than 25 percent of the work to be performed by the associates assigned to the matter), at least up to the time of Plaintiff's fee submissions.  This top-heavy staffing itself suggests the appropriateness of a reduction in the requested fees.

**hour**, *see Lin*, 2020 WL 1819941, at \*5, and this Court is of the view that this rate would similarly be reasonable to compensate Plaintiff for Byun's work in this case.

### 3. Schweitzer

According to Troy, Schweitzer, like Byun, served in the capacity of a "managing associate" at Troy Law.  (6/19/19 Troy Decl. ¶ 29.)  Troy states that Schweitzer received his law degree from Fordham University School of Law in 2016 (*id.*), and that, at the time of Plaintiff's fee application, Schweitzer had two years of legal experience, having represented plaintiffs in employment cases with Troy Law since November 2017 (*id.*).

Although Troy requests that the Court find $350 per hour to be a reasonable rate for Schweitzer (*id.*), this Court notes that, in this Circuit, Schweitzer has generally been awarded an hourly rate of $100 or $150, consistent with his status as a relatively junior associate, *see, e.g., Singh*, 2019 WL 4861882, at \*9; *Zhong*, 2018 WL 4853041, at \*3; *Suarez*, 2019 WL 5694118, at \*15; *Shanfa*, 2019 WL 3715086, at \*6.  In fact, in *Lin*, this Court awarded Schweitzer a rate of $125 per hour, *see Lin*, 2020 WL 1819941, at \*5, and, in light of some of the quality issues associated with Schweitzer's filings in this case (*see, e.g.*, discussion *supra*, with regard to Schweitzer's supplemental submissions), this Court sees no reason why a higher rate should be awarded here.  Accordingly, I recommend that the Court find that the rate of **$125 per hour** would be reasonable to compensate Plaintiff for Schweitzer's work.

### B. Reasonable Hours

In support of Plaintiff's request for attorneys' fees, Troy Law has provided the Court with a copy of its time records (Dkt. 35-1), which appear to have been maintained contemporaneously during the course of the litigation, and which show the billable hours counsel expended during the course of the action.  Plaintiff is requesting attorneys' fees for 52.58 hours of work by Troy,

1.25 hours of work by Byun, and 17.03 hours of work by Schweitzer.  (*See* 6/19/19 Troy Decl.

¶ 35.)  This Court has reviewed the records submitted by counsel and, for several reasons, finds

that the stated hours should be reduced.

First, a number of time entries submitted by counsel are too vague for this Court to

determine whether they reflect time reasonably spent.  For example, on January 5, 2016, Troy

billed 2.25 hours to "Defendant Website Research:

Yelp/[]Grubhub/MenuPages/[]Delivery.com/[]FB/web."  (Dkt. 35-1.)  On the same day, Troy

billed 1.3 hours to "Research: Lexis Nexis[]/Legal[]/Others."  (*Id.*)  On May 24, 2017, Troy

billed 1.3 hours to "Re-search: Lexis Nexis[]/Legal[]/Others."  Such entries are too vague to

allow for meaningful judicial scrutiny.  *See, e.g.*, *D.J. v. City of New York*, No. 11cv5458 (JGK)

(DF), 2012 WL 5431034, at *7-8 (S.D.N.Y. Oct. 16, 2012) (noting that attorney time entries that

merely indicate that "research" was performed are generally considered too vague to justify full

recovery), *report and recommendation adopted sub nom. Roberts v. City of New York*, 2012 WL

5429521 (Nov. 7, 2012).

Second, the Docket reflects that, on a number of occasions, work was performed

incorrectly by counsel and therefore had to be performed a second time.  Not only did counsel

need to refile several documents after they were rejected for filing errors, but this Court notes

that Plaintiff's initial motions for a default judgment and for attorneys' fees were both denied

without prejudice for a failure to follow the Court's Individual Rules of Practice.  (*See* Dkt. 37.)

Counsel's fee records, however, reflect that they are seeking recovery for the fees incurred for

both the work that was improperly performed and the same work that was later redone.  It would

not be reasonable for Defendants to have to pay for Plaintiff's counsel's errors.

Third, some of the time shown for certain tasks appears unreasonable on its face.  For example, on January 10, 2016, Troy recorded spending .50 hours to "File Consent to Become Party Plaintiff."  (*See* Dkt. 35-1, at 1.)  This Court has checked the Docket, and the only such "Consent" filed on that date was a blank, boilerplate consent form, filed as an attachment to Plaintiff's original Complaint – which was, itself, rejected for a filing error.  (*See* Dkt. 1-3.)  It also appears unreasonable, for example, for Troy, on January 29, 2016, to have billed 1.6 hours (for which he seeks nearly $900) to a task described only as:  "2 copies AO399 Waiver of Service Form to each Def."  (*See* Dkt. 35-1, at 1.)  This Court additionally notes that it appears that Byun may be seeking his full rate for time spent traveling to a Post Office, so as to mail a document to the Court, given his recorded time entry of 1.0 hours, on June 20, 2017, for "Certificate of Default to SDNY Court Clerk (Hard Copy Required)")" (*see id.*, at 2), and the corresponding disbursement of $4.05, itemized on the same day, for "Certified mail Certificate of Default to SDNY Court Clerk (Hard Copy Required)" (*id.*, at 4).  Putting aside the question of whether an attorney, as opposed to support staff, should be traveling to a Post Office, the Court typically allows recovery of attorney travel time at only 50 percent of the attorney's otherwise approved rate.  *See, e.g.*, *Vicente v. Ljubica Contractors LLC*, No. 18cv419 (VSB) (OTW), 2019 WL 2137001, at *5 (S.D.N.Y. May 16, 2019) ("[i]n this District, attorney travel time is generally compensated at 50% of the attorney's reasonable billing rate") (citing *Siegel v. Bloomberg L.P.*, No. 13cv1351 (DF), 2016 WL 1211849, at *7 (S.D.N.Y. Mar. 22, 2016)).

Finally, as a general matter, this Court notes that this matter involved straightforward claims under the FLSA and NYLL – claims with which Plaintiff's counsel purport to be well-acquainted, and as to which Defendants *defaulted*.  Counsel should not have needed to spend over 70 hours on the case, when Defendants never appeared.

Courts in this district have applied reductions, often between 15 to 30 percent, to account for issues like vagueness in counsel's time records, and the resulting inability of the Court to assess the reasonableness of counsel's hours. *See, e.g., Custodio v. Am. Chain Link & Const., Inc.*, No. 06cv7148 (GBD), 2014 WL 116147, at *16 (S.D.N.Y. Jan. 13, 2014) (adopting report and recommendation) (applying 15% reduction for, *inter alia*, vagueness in billing records); *Congregation Rabbinical Coll. v. Village of Pomona*, 188 F. Supp. 3d 333, 344 (S.D.N.Y. 2016) (imposing a 30% reduction of total number of hours for which fees were sought, to account for, *inter alia*, vagueness of time entries). Percentage reductions may also be appropriate where it appears, for other reasons, that the time expended by counsel was excessive. *See generally Carey*, 711 F.2d at 1142, 1146 (noting that a percentage reduction may be applied as a "practical means of trimming fat" from a fee application).

In this case, based on the lack of clarity in the Firm's time records, and for the other reasons described above, it is difficult for this Court to conclude that the expended time was reasonable. Plaintiff bears the burden of demonstrating the reasonableness of the fee request, and Plaintiff has not met that burden here. To account for the problems that are evident from counsel's time records, I recommend that the time billed by counsel to this case be reduced, overall, by 30 percent.

### C.   Lodestar Calculation

Using the reasonable rates and hours described above (*i.e.*, reducing counsel's overall stated hours by 30 percent) would result in the following lodestar calculation:

| Timekeeper | Reasonable Hourly Rate | | Reasonable Hours Worked | | Fees Incurred |
|---|---|---|---|---|---|
| John Troy, Esq. | $325.00 | x | 36.81 | = | $11,963.25 |
| George Kibum Byun, Esq. | $160.00 | x | 0.88 | = | $140.80 |
| Aaron Schweitzer, Esq. | $125.00 | x | 11.92 | = | $1,490.00 |
| | | | | | **TOTAL: $13,594.05** |

This Court finds no exceptional circumstances here that would warrant deviation from the lodestar, *see Perdue v. Kenny A. ex rel. Wynn*, 559 U.S. 542, 552 (2010), and I therefore recommend that Plaintiff be awarded attorneys' fees in the amount of **$13,594.05**.

**D.   Costs**

Plaintiff additionally seeks a total of $804.38 in litigation costs.  (*See* 6/19/19 Troy Decl, ¶ 36; Dkt. 35-1, at 4.)  While this Court takes judicial notice of the $400.00 filing fee included within the requested costs, and therefore finds it to be compensable, *see Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 219 (E.D.N.Y. 2019), this Court does not recommend that any other costs be awarded.

Apart from its own invoice itemizing certain expenses (*see* Dkt. 35-1, at 4), Troy Law has failed to submit any underlying documentation that the expenses were incurred, which, in itself, is a reason why they should not be awarded, *see, e.g*, *Pastor*, 2017 WL 5625556, at *9 (declining to award process-server fees where the plaintiff had failed to submit underlying documentation from its counsel, supporting that the fees were incurred).  Moreover, from the descriptions provided, it is not even clear what certain of the expenses covered.  For example, the Firm itemized that it incurred $120 in costs for "Summons and Amended Complaint" (Dkt. 135-1, at 4), without explaining whether that $120 was incurred for printing, copying, or service of process – and, if service, by what process server, upon which defendant(s).  Similarly, the Firm listed $13.60 for "Courtesy Copy Motion for Attorneys' Fees," as well as "$12.40 for "Courtesy Copy Default JM" (*id*.), without explaining whether those costs were for printing, copying, mailing, overnighting, or hand-delivering the papers to the Court.

It is Plaintiff's burden to demonstrate that the litigation costs sought were reasonably incurred and are properly recoverable from the defaulting Defendants, and in the absence of

supporting documentation or detail concerning the listed expenses, Plaintiff, for the most part, has not met this burden.  This Court therefore recommends that only **$400.00** in costs be awarded.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that upon Defendants' default, Plaintiff be granted judgment against Defendants, jointly and severally, in the amounts of:

1.   $190,005.00 in unpaid overtime wages;

2.   $190,005.00 in liquidated damages;

3.   Prejudgment interest on the unpaid wages set out in paragraph 1, above, in the amount of:

      a.   $116,938.97 up to February 11, 2021, plus

      b.   additional prejudgment interest to be calculated by the Clerk of Court, at a rate of nine percent per annum, from February 11, 2021 through the date of final judgment;

4.   $10,000.00 in statutory damages for failure to provide wage statements and wage notices;

5.   $13,594.05 in attorneys' fees; and

6.   $400.00 in costs.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail).  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Edgardo Ramos, U.S.D.J., United States Courthouse, 40 Foley Square, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Ramos.  FAILURE TO FILE

OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF

OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S.

140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993);

*Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58

(2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Plaintiff's counsel is directed to serve a copy of this Report and Recommendation on

Defendants by means reasonably calculated to reach them, and to file proof of such service on

the Docket of this action, no later than May 20, 2021.

Dated:  New York, New York
        May 17, 2021

Respectfully submitted,

_____
DEBRA FREEMAN
United States Magistrate Judge